## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIBERTY BRANDS, LLC, | ) | Case No. 07-10645  (MFW) |
| | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL JOSEPH, as Liquidating | ) | |
| Trustee for Liberty Brands, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 09-50965  (MFW) |
| | ) | |
| SCOTT FEIT, SJF ASSOCIATES, | ) | |
| INC., NATIONAL DISTRIBUTION | ) | |
| NETWORK, BARRY GARNER, | ) | |
| DISCOUNT TOBACCO WAREHOUSE, | ) | |
| INC., A&A OF TUPELO, INC., | ) | |
| d/b/a GLOBE DISTRIBUTING, | ) | |
| SUNFLOWER SUPPLY COMPANY, INC. | ) | |
| GARY L. HALL, BENTLEY | ) | |
| INVESTMENTS OF NEVADA, LLC, | ) | |
| HALL RETAINED ANNUITY TRUST I, | ) | |
| and THE HALL FAMILY TRUST | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION[1]

Before the Court are the Liquidating Trustee's Motion for
Partial Summary Judgment and the Motions of the Remaining
Defendants to Dismiss the Complaint and for Summary Judgment on
all counts related to them.  For the reasons set forth below, the
Court will deny the Motions.

_____

[1]  This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

I.   <u>PROCEDURAL BACKGROUND</u>

Liberty Brands LLC (the "Debtor") was in the business of manufacturing, marketing and selling deeply discounted cigarettes in the United States.  The Debtor was party to an agreement, as a cigarette manufacturer, to make annual payments to certain states (the "Settling States").  When the Debtor was unable to make a required payment to the Settling States, it filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 10, 2007.

Post-petition, the Debtor was unable to obtain financing or to sell its inventory in the ordinary course of business.  The Debtor conducted an auction of its manufacturing equipment and the sales were approved by the Court on November 5 and December 12, 2007.  Ultimately, on November 27, 2007, the Court authorized the Debtor to destroy its unsold inventory in accordance with Tobacco Tax and Trade Bureau procedures.  A Plan of Liquidation was proposed by the Settling States (the "Plan") which was confirmed by the Court on March 12, 2009.  Pursuant to the Plan, Michael Joseph was appointed as the Liquidating Trustee to administer the estate and pursue certain litigation.

On May 8, 2009, the Liquidating Trustee filed a complaint against numerous defendants seeking to avoid and recover certain transfers, under theories of conversion, fraud, fraudulent conversion, preferences, civil conspiracy, disallowance of

claims, and unjust enrichment.  The Complaint was amended on January 24, 2011, to add more counts and additional defendants (the "Amended Complaint").  The Liquidating Trustee settled with some of the Defendants (Scott Feit, SJF Associates, and National Distribution Network) and another, A&A of Tupelo, Inc., d/b/a Globe Distributing, filed a chapter 7 bankruptcy petition staying the action against it.  (Ex. A at 13-14, 17; D.I. 136 & 169.)[2]

On February 23, certain of the Defendants, Bentley Investments of Nevada, LLC ("Bentley"), Hall Retained Annuity Trust I ("Trust I"), and The Hall Family Trust ("Family Trust") filed a Motion to Dismiss the Amended Complaint for failure to allege sufficient facts to support the conversion, preference, fraudulent conveyance and unjust enrichment claims against them. On March 3, 2011, the other Defendants filed a Motion to Dismiss the Amended Complaint contending that it failed to allege sufficient facts to support the count for committing a fraud on the court.  A notice of completion of briefing on those Motions was filed on March 31, 2011.

The next day, the Liquidating Trustee filed a Motion for Partial Summary Judgment on certain of the counts against Gary L.

---

[2]  References to the record are as follows: "Ex. #" refer to the Exhibits attached as an Appendix to the Liquidating Trustee's Opening Brief in Support of his Motion for Summary Judgment; "Ex. A et seq." refer to the Exhibits attached to the Remaining Defendants' Motion for Summary Judgment; "D.I. #" refers to the pleadings identified on the docket of the adversary proceeding.

Hall, Barry Garner, Discount Tobacco Warehouse, Inc. ("DTW"),
Sunflower Supply Company ("Sunflower"), Bentley, Trust I and
Family Trust (collectively, the "Remaining Defendants").  On that
same date the Remaining Defendants filed a Cross Motion for
Summary Judgment.  Briefing on the Cross Motions for Summary
Judgment was completed on May 12, 2011, and the matters are ripe
for decision.

II.  <u>JURISDICTION</u>

     This Court has core jurisdiction over the counts for
conversion, avoidance of preferences, fraudulent conveyances, and
the post-petition transfers, and disallowance of the Remaining
Defendants' claims.  28 U.S.C. §§ 1334 & 157(b)(2)(A), (B), (E),
(F) & (H).  The Court has related to jurisdiction over the other
counts of the Amended Complaint.  28 U.S.C. § 157(c).

III. <u>DISCUSSION</u>

     A.   <u>Uncontested Facts Relating to Motions</u>[3]

     Gary L. Hall, Trust I, and the Trust were shareholders of
Medallion Company, Inc. ("Medallion") which was a manufacturer
and seller of cigarettes.  On February 15, 2002, Medallion was
sold to VGR Acquisition, Inc.  As part of that sale, Hall and his

---

     [3]  In their response to the Liquidating Trustee's Motion for
Partial Summary Judgment, the Remaining Defendants admit these
facts.  (D.I. 159.)

related entities agreed not to compete with the purchaser in the development or manufacture of cigarettes or to "lend[] assistance to anyone engaged in the business of developing or manufacturing cigarettes in the United States or elsewhere in the world, as an owner, investor, employee, or in any manner whatsoever." (Ex. 3 at ¶ 4.08.)

The Debtor was formed in 2002 by Scott Feit and began manufacturing, marketing, and selling discount cigarettes in September 2002. (Ex. 1 at 22.) In early 2005, the Debtor entered into a transaction with Discount Tobacco Warehouse ("DTW") whereby DTW paid the Debtor $7,980,000 as an advance against a Purchase Order for 14,000 cases of cigarettes at a price of $570 per case. (D.I. 173 at ¶ 5.) The Debtor used those funds to make its required 2005 payment to the Settling States. The Debtor executed a Security Agreement creating a security interest in all its assets in favor of DTW to secure its obligation under the Purchase Order. (Ex. G.) To obtain the funds paid to the Debtor under the Purchase Order, DTW borrowed $8,000,000 from Bentley. (D.I. 159 at 5.)

In 2006, the Debtor borrowed $5,100,000 from T. Davis Miller to make its required annual payment to the Settling States. (D.I. 159 at 6; Ex. B at 85.) The Debtor executed a Promissory Note in favor of Miller dated April 14, 2006, which was due in full on April 14, 2007. (D.I. 159 at 7; Ex. 7.) To make the

5

loan to the Debtor, Miller borrowed funds from Bentley.  (D.I. 159 at 6.)  After the funds were lent, Hall demanded that the Debtor grant a security interest to secure the repayment, but the Debtor refused.  (D.I. 159 at 7.)

Thereafter, Miller assigned the Promissory Note to DTW. (Ex. 9.)  On or about October 3, 2006, DTW assigned the Purchase Order, Security Agreement, and Promissory Note to A&A of Tupelo, Inc. ("A&A") an entity that had been created a few days earlier by Randy Benham ("Benham") its 100% shareholder.  (Exs. 10 & 11; Ex. 8 at 11-13.)  In exchange for that assignment, A&A agreed to repay DTW its cost plus a $15 commission for every case of cigarettes A&A received from the Debtor under the Purchase Order. (Ex. 6 at 42-44; Ex. 10.)

On or about March 30, 2007, A&A sent notice to the Debtor that it was in default of the Purchase Order by failing to produce as required.  (Ex. 12.)  Shortly thereafter, the Debtor filed its bankruptcy case.

Post-petition, counsel for A&A asserted a secured claim in excess of $2 million and other general unsecured claims.  (D.I. 145.)  One of the Settling States, the Commonwealth of Virginia, objected to the claims.  (D.I. 154.)  Ultimately a settlement was reached whereby A&A was to receive $1.1 million from the auction of the Debtor's property and waived its other claims.  (D.I. 173.)  The settlement was approved by the Court on October 30,

6

2007.  (D.I. 182.)  After the auction, the Debtor wired $1.1 million of the proceeds to Bentley at the instruction of A&A's counsel.  (Ex. 14.)  Those funds were ultimately transferred to Hall, the Family Trust, and Trust I.  (Ex. 15.)

B.   Motions to Dismiss

1.   Standard of Review

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.").  A claim is deemed sufficient if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  A complaint is sufficient if the claim is "facially plausible," a determination that is based upon the reviewing court's "judicial experience and common sense."  Id. at 1950.

The Third Circuit has implemented a two-part analysis: "First the factual and legal elements of a claim should be separated.  The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  See also Iqbal, 129 S. Ct. at 1949-50 ("Threadbare recitals of

7

the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  "The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim."  <u>Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)</u>, Bankr. No. 03-12656, Adv. No. 08-50248, 2008 WL 4239120, at *4 (Bankr. D. Del. Sept. 16, 2008).

2.   <u>Basis of Motions to Dismiss</u>

Bentley, Trust I, and the Family Trust filed a Motion to Dismiss the Amended Complaint contending that the Complaint failed to allege any facts supporting the allegation that they exercised control over any property of the Debtor to support a claim for conversion or identified any specific transfers to them that were preferential, fraudulent, or unjustly enriched them. In addition, they contend that the count of civil conspiracy is founded solely on general legal conclusions without any specific facts.  The other Defendants contend that the Complaint similarly lacks sufficient facts to support the fraud on the Court count.

The Liquidating Trustee responds that the Amended Complaint clearly alleges that Bentley, Trust I, and the Family Trust received part of the $1.1 million payment which was to be paid by the Debtor to A&A pursuant to the A&A settlement.  (D.I. 122 at

8

¶¶ 57-64, 79-83.)  It was that transfer which the Liquidating Trustee contends was not authorized by the Court, is preferential, fraudulent, and a conversion of property of the estate, warranting an order for turnover and disallowance of the Remaining Defendants' claims.  (Id. at ¶¶ 79-117.)  The Liquidating Trustee also contends that the Amended Complaint does allege that all the Remaining Defendants conspired with each other to deprive the Debtor of its property.  (Id. at ¶¶ 165-67.) With respect to the Motion to Dismiss the fraud on the court count, the Liquidating Trustee responds that he has sufficiently articulated facts to support the legal requirements for that claim, specifically that the Remaining Defendants misled the Debtor and the Court into believing that A&A had valid claims against the estate, that the compromise of those claims was in the interest of the estate, and that the settlement payment would be made to A&A in satisfaction of those claims.  (Id. at ¶¶ 58-64, 165-67.)

The Court agrees with the Liquidating Trustee that the $1.1 million transfer to Bentley, Trust I, and the Family Trust is sufficiently identified in the Amended Complaint to withstand the Motion to Dismiss.  Further, the Court finds that the Amended Complaint adequately pleads a fraud on the court count.  See, e.g., Miller v. Greenwich Cap. Fin. Prods., Inc. (In re Am. Bus. Fin. Servs., Inc.), 384 B.R. 80, 85-86 (Bankr. D. Del. 2008).

Accordingly the Court will deny the Motions to Dismiss.

    C.    Motions for Summary Judgment

        1.    Standard of Review

    The Court should grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[4]

    In considering a motion for summary judgment under Rule 56, the Court must view the inferences from the record in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Wagner Mining Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981).  If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, the Court must enter judgment in the movant's favor.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

    The movant bears the burden of establishing that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986); Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Grp.,

---

    [4]  Rule 56 of the Federal Rules of Civil Procedure is made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

<u>Inc.)</u>, 377 B.R. 471, 475 (Bankr. D. Del. 2007).  A fact is
material when it could "affect the outcome of the suit."
<u>Anderson</u>, 477 U.S. at 248.

Once the moving party has established its prima facie case,
the party opposing summary judgment must go beyond the pleadings
and point to specific facts showing there is a genuine issue of
fact for trial.  <u>See, e.g.</u>, <u>id.</u> at 252; <u>Matsushita</u>, 475 U.S. at
585-86; <u>Michaels v. New Jersey</u>, 222 F.3d 118, 121 (3d Cir. 2000);
<u>Robeson Indus. Corp. v. Hartford Accident & Indem. Co.</u>, 178 F.3d
160, 164 (3d Cir. 1999).  If the moving party offers only
speculation and conclusory allegations in support of its motion,
its burden of proof is not satisfied.  <u>See Ridgewood Bd. of Educ.
v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999).

2.   <u>Liquidating Trustee's Legal Theories</u>

In its Motion, the Liquidating Trustee seeks partial summary
judgment on its Amended Complaint on the Counts relevant to the
$1.1 million paid by the Debtor pursuant to the A&A settlement
which were wired to Bentley (and ultimately transferred to Hall,
Trust I, and the Family Trust).  The Liquidating Trustee's motion
is premised on Responses to Interrogatories filed by A&A in this
adversary in which A&A states that it was never owed anything by
the Debtor before the bankruptcy case was filed.  (Ex. 13 at ¶¶
6-8.)  While it admits that it received product from the Debtor
pre-petition, A&A states in its Responses that the product was

11

owned by DTW and that A&A received it on a consignment basis.
(Id. at ¶¶ 1, 20.)  A&A further states that it did not hire
counsel to appear in the Debtor's bankruptcy case, to file any
claims, or to negotiate the settlement.  (Id. at ¶ 20.)  A&A
admits that the Assignment of the Purchase Order and Security
Agreement was signed by its owner and president, Randy Benham,
but asserts it was intended only to allow A&A to distribute the
consigned goods which belonged to DTW.   (Id. at ¶ 23.)  A&A also
states that although the Assignment to A&A of the Promissory Note
is purportedly signed by Benham, in fact he did not sign that.
(Id.)

   The Liquidating Trustee contends, based on those Responses,
that Hall and the entities related to him assumed the identity of
A&A and made the false representation in this Court that A&A was
owed a debt in order to obtain the $1.1 million transfer.  This
he contends was the wrongful exercise of control over (and a
conversion of) property of the Debtor entitling him to judgment
on Count I.  In re Musicland Holding Co., 386 B.R. 428, 440
(S.D.N.Y. 2008) (holding that conversion is the "unauthorized
assumption and exercise of the right of ownership over goods
belonging to another to the exclusion of the owner's rights.")
(citations omitted) .  The Liquidating Trustee also argues that
the transfer was an unauthorized post-petition transfer avoidable
under section 549 and recoverable under sections 542 and 550. 11

12

U.S.C. §§ 542, 549(a) & 550.  See, e.g., In re Russell, 927 F.2d
413, 417-28 (8th Cir. 1991); Pardo v. Pacificare of Texas, Inc.
(In re APF Co.), 264 B.R. 344, 359-60 (Bankr. D. Del. 2001);
Musso v. Brooklyn Navy Yard Dev. Corp. (In re Westchester Tank
Fabricators, Ltd.), 207 B.R. 391, 396-97 (Bankr. E.D.N.Y. 1997);
Moratzka v. Visa U.S.A. (In re Calstar, Inc.), 159 B.R. 247, 252
(Bankr. D. Minn. 1993).

     The Liquidating Trustee also asserts that the post-petition
transfer is avoidable because it was a transfer with the actual
intent to defraud creditors who had legitimate claims and was a
fraud on the Court entitling him to judgment on Counts VI and
XIII.  See, e.g., Schlaifer Nance & Co. v. Estate of Warhol, 119
F.3d 91, 98-100 (2d Cir. 1997); Wieboldt Stores, Inc. v.
Schottenstein, 94 B.R. 488, 504 (N.D. Ill. 1988); Am. Bus. Fin.
Servs., 384 B.R. at 85-86; Adelphia Commc'ns Corp. v. Bank of New
York, N.A. (In re Adelphia Commc'ns Corp.), 365 B.R. 24, 34-35
(Bankr. S.D.N.Y. 2007).  Further, the Liquidating Trustee argues
that Bentley, Hall, Trust I, and the Family Trust were all
unjustly enriched by the $1.1 million transfer and that "equity
and good conscience" militate against permitting them to retain
those funds entitling him to judgment on Count VII.  Carroll v.
LeBoeuf Lamb Greene & MacRae, LLP, 623 F. Supp. 2d 504, 510-13
(S.D.N.Y. 2009).  The Liquidating Trustee finally asserts that
the actions of Bentley, Hall, Trust I, and the Family Trust

13

constitute a civil conspiracy because they had a common design to injure the Debtor and committed acts in furtherance of that design which injured the Debtor entitling him to judgment on Count XVII.  See, e.g., Grubin v. Rattet (In re Food Mgmt. Group, LLC), 380 B.R. 677, 703-04 (Bankr. S.D.N.Y. 2008).

        3.   Remaining Defendants' Arguments

           a.   Timeliness of Action

The Remaining Defendants preliminarily argue that the Amended Complaint must be dismissed as time-barred.  They argue that an action under section 549 must be brought within two years of the transfer.  11 U.S.C. § 549(d).  In this case the transfer occurred on November 17, 2007, and the Liquidating Trustee's Amended Complaint, which asserted for the first time the avoidability of the $1.1 million transfer, was not filed until January 24, 2011.[5]  (D.I. 122 at ¶¶ 58-64.)

The Liquidating Trustee responds that the action is timely because it had no reason to know of the fraudulent nature of the post-petition transfer until A&A filed its Responses to Interrogatories on April 30, 2010, and stated that A&A had no claim against the Debtor.  (Ex. 13.)  As a result, the Liquidating Trustee asserts he is entitled to equitable tolling of the statute of limitations contained in section 549(d).  See,

---

     [5]  The original Complaint was filed on May 8, 2009, but did not contain any counts relating to the $1.1 million post-petition payment.  (Ex. H.)

e.g., <u>Michaels v. Nat'l Bank of Sussex Cnty., (In re E-Tron Corp.)</u>, 141 B.R. 49, 55 (Bankr. D.N.J. 1992); <u>Halderman Farm Mgmt. Servs., Inc. v. Superblend, Inc. (In re Bookout Holsteins, Inc.)</u>, 100 B.R. 427, 429 (Bankr. N.D. Ind. 1989).

Equitable tolling of a statute of limitations is appropriate where one of three conditions is met: "(1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." <u>In re Rowland</u>, 275 B.R. 209, 216 (Bankr. E.D. Pa. 2002). In this case, the Court agrees with the Liquidating Trustee that grounds exist for equitable tolling of the statute of limitations because the Liquidating Trustee could not have all of the facts relating to the post-petition transfer until discovery was conducted in this adversary.  Counsel purporting to act on behalf of A&A had filed and prosecuted claims in this case.  It was not until A&A filed answers to interrogatories stating that it had no claim that the Liquidating Trustee could have asserted the claims for recovery of the $1.1 million paid in satisfaction of the A&A claims.

### b.  <u>Merits of claims</u>

The Remaining Defendants also contend that the Liquidating Trustee's motion must fail (and that they are entitled to summary

15

judgment) because there was in fact a debt owed to A&A, the
payment of that debt (as compromised) was authorized by the
Court, and A&A directed that the payment be made to Bentley
(which authorized the payments to Hall, Trust I, and the Family
Trust).  Therefore, they argue that there can be no claim for
conversion or <u>unauthorized</u> post-petition transfer.[6]  They point
to evidence that the Debtor did in fact borrow over $13 million
(at least part of it on a secured basis) and the payment made by
it post-petition was in satisfaction of part of that debt.  (Ex.
A at 47-48, 67-68.)  The Remaining Defendants rely on the
executed Purchase Order, Security Agreement and Promissory Note,
and the Assignment to A&A.  (Exs. D, G, & J.)  This is
corroborated, the Remaining Defendants contend, by the testimony
of Feit and Benham.  (Ex. A at 47-48, 67-68 & Ex. N at 67-68.)
The Remaining Defendants also rely on the deposition testimony of
Hall and Garner to support their position.  (Exs. B & E.)

    The Court finds that summary judgment is not appropriate
because there are disputed issues of material fact, including (1)
whether A&A was in fact owed a debt by the Debtor at the time of
the filing of the petition and the time of payment of the post-
petition settlement; (2) whether counsel who appeared in the
bankruptcy case on behalf of A&A were authorized to act on its

_____

    [6]  The Remaining Defendants also contend that the repayment
cannot be avoided as a preference or fraudulent conveyance under
sections 544, 547, or 548 because it was made post-petition.

behalf; (3) whether the payment to Bentley was authorized by A&A to satisfy its debt; and (4) whether there were any affirmative misrepresentations to the Court or the Debtor regarding the A&A claim.  It is particularly difficult to determine the facts in this case because each party only submitted portions of the deposition transcripts and much of the facts will depend on the credibility of the witnesses.

c.   <u>Disallowance of claims</u>

Because the Liquidating Trustee contended that he is entitled to avoidance of the $1.1 million transfer, he also sought disallowance of any claim of the Remaining Defendants (Count V).  11 U.S.C. § 502(d).  The Remaining Defendants contend that this count must fail because they do not in fact owe anything to the Liquidating Trustee and they did not file any claims in the bankruptcy case.

The Court agrees with the Remaining Defendants that summary judgment on this count is, at least, premature because no judgment has been entered against them and because they have not filed any claims in this case.  <u>See, e.g.</u>, <u>Petitioning Creditors of Melon Produce, Inc. v. Braunstein</u>, 112 F.3d 1232, 1237 (1st Cir. 1997); <u>In re Atl. Computer Sys., Inc.</u>, 173 B.R. 858, 861-62 (S.D.N.Y. 1994); <u>In re Lids Corp.</u>, 260 B.R. 680, 684 (Bankr. D. Del. 2001); <u>In re Chase and Sanborn Corp.</u>, 124 B.R. 368, 370 (Bankr. S.D. Fla. 1991) (citing <u>In re Colonial Servs. Co.</u>, 480

17

F.2d 747, 749 (8th Cir. 1973)); <u>Mktg. Res. Int'l Corp. v. PTC</u>
<u>Corp. (In re Mktg. Res. Int'l Corp.)</u>, 35 B.R. 353, 356 (Bankr.
E.D. Pa. 1984).

     D.   <u>Remaining Defendants' Motion for Summary Judgment</u>

     In their Motion for Summary Judgment, the Remaining
Defendants seek judgment in their favor on all the counts of the
Trustee's Amended Compliant.

     1.   <u>$1.1 million post-petition payment</u>

     For the reasons stated above in denying the Liquidating
Trustee's Motion for Partial Summary Judgment, the Court will
deny the Remaining Defendants' motion for summary judgment with
respect to this transfer because the Court finds that there are
disputed issues of material fact relevant to that payment,
including the particulars of the underlying debt owed by the
Debtor and the characterization of payments made to and by the
Debtor, as well as representations made by various parties to the
Debtor and the Court.  The credibility of the witnesses is hard
to judge from bare deposition transcripts.

     2.   <u>Equipment sale and loan</u>

     In its Amended Complaint, the Liquidating Trustee alleges
that on or about October 28, 2002, Sunflower sold equipment for a
purchase price of $604,000 to Dobson Makepak Limited, who resold
it to the Debtor for $648,545.  (D.I. 122 at ¶¶ 20-21.)  The
Debtor paid for that equipment by wire transfer on December 12,

2002. (Id. at ¶ 20.)  The Remaining Defendants do not contest this part of the transaction.

The Liquidating Trustee further alleges, however, that in addition to paying for the equipment, the Debtor for no legitimate reason made additional payments totaling $1.2 million as follows: $300,000 to Sunflower in 2003 and 2004; $200,000 to Garner (to satisfy a debt owed by Sunflower to Garner) on August 24, 2004; and $700,000 to DTW in August and October 2005. (Id. at ¶ 23.)  The Liquidating Trustee contends that the $1.2 million should actually be characterized as a capital contribution to the Debtor by Hall through entities he controlled. (Id. at ¶ 169.) See, e.g., Burtch v. Huston (In re USDigital, Inc.), 443 B.R. 22, 52-53 (Bankr. D. Del. 2011); Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.), 299 B.R. 732, 740-42 (Bankr. D. Del. 2003).

a.   Timeliness

The Remaining Defendants contend that none of the transfers of which the Liquidating Trustee complains are avoidable preferences because none occurred within the statutory preference period.  The Debtor filed its bankruptcy petition on May 10, 2007.  Therefore, the Remaining Defendants argue that the Liquidating Trustee may recover only payments made between February 9, 2007, and the petition date. None of the payments at issue were within that period.

The Liquidating Trustee asserts in its Amended Complaint,
however, that the transfers were to or for the benefit of
insiders and therefore subject to a one-year look-back period.
11 U.S.C. § 547(b)(4).  That would still, however, include only
payments between May 10, 2006 and May 10, 2007.  The Liquidating
Trustee concedes that only two transfers to DTW are implicated by
the preference action but contends that the other transfers at
issue are fraudulent and/or conversions of property of the
estate.  There is no contention by the Defendant that those
actions are untimely.  Therefore, the Court will not grant
summary judgment based on the statute of limitations for those
counts.

> b.   <u>Merits of claim</u>

The Remaining Defendants respond that the payments were in
satisfaction of a $1.2 million loan to the Debtor from Sunflower
in December 2002.  The loan, they contend, is evidenced by an
entry on the Debtor's general ledger.  (Ex. M.)  The Remaining
Defendants note that the Debtor's president (and the Liquidating
Trustee's Rule 30(b) witness), Scott Feit, acknowledged the
existence of the loan and the legitimacy of its repayment.  (Ex.
A at 34-39.)

There is, however, no documentation of that loan or its
terms.  Therefore, the Court finds that there are disputed issues
of material fact relevant to the payments made by the Debtor to

20

Sunflower, Garner, and DTW for the alleged "equipment loan," including (1) whether funds were in fact advanced to the Debtor as a loan or as capital, (2) what was the amount of the loan, (3) who made that loan, (4) what were the terms of the loan, and (5) were the payments to Sunflower, Garner, and DTW in satisfaction of that loan.  Consequently, the Court will deny the Remaining Defendants' Motion for Summary Judgment with respect to those payments.

### 3.   Transfers to Garner

In addition to the transfer to Garner which is characterized as a partial repayment of the equipment loan from Sunflower, the Liquidating Trustee seeks to recover "exorbitant compensation" paid to him while he was an officer of the Debtor.  (D.I. 122 at ¶ 76, Ex. C.)  The Remaining Defendants admit that Garner was an officer and, therefore, insider and fiduciary of the Debtor. (D.I. 152 at 21 & 30.)  The Remaining Defendants' arguments in their Summary Judgment Motion relate solely to the $200,000 payment made to Garner allegedly in repayment of the equipment loan and do not address the "exorbitant compensation" claim of the Liquidating Trustee.  Therefore, the Court concludes that summary judgment on that claim is not appropriate.

### 4.   Transfers to Hall and DTW

The Liquidating Trustee seeks to recover numerous transfers made to Hall and DTW under theories of conversion, fraudulent

transfer and preference avoidance, unjust enrichment, breach of
fiduciary duty, and recharacterization of debt as equity.  The
Remaining Defendants seek summary judgment on these counts
contending that all the transfers to DTW were valid repayments of
the funds advanced by it to the Debtor pursuant to the Purchase
Order.

The Liquidating Trustee contends, however, that the Debtor
made $3.4 million in payments to DTW (at Hall's direction) to
which it was not entitled because under the Purchase Order DTW
was entitled only to product not to cash.  (D.I. 122 at ¶ 37; Ex.
4.)  The Remaining Defendants dispute this, asserting that under
the Purchase Order DTW could be entitled to cash payments,
including interest.  (D.I. 161 at 8-9; Ex. D at 3.)  This is a
genuine issue of material fact.

In addition, the Liquidating Trustee contends that DTW
required that the Debtor supply product to it under the Purchase
Order even after DTW had assigned it to A&A.  (Exs. I & J.)  The
Remaining Defendants dispute the contention that DTW ordered
product under the Purchase Order after assigning it, noting that
DTW paid cash for all those orders rather than deducting them
from the Purchase Order.  (D.I. 161 at 12-13.)  This is a genuine
issue of material fact.

The Liquidating Trustee also asserts that the entire
Purchase Order arrangement was merely a sham to disguise a

capital infusion by Hall into the Debtor that was prohibited by his non-compete agreement with VGR, the purchaser of Medallion. (D.I. 158 at 12.)  The Remaining Defendants dispute this.  (D.I. 161 at 8-9.)  This is a genuine issue of material fact.

The Court concludes that summary judgment in favor of the Remaining Defendants is not appropriate because there are numerous material issues of disputed fact as to whether the entire transaction was a sham, whether the payments were for legitimate debt, and whether the Remaining Defendants were insiders of the Debtor and, as such, owed the Debtor fiduciary duties.  See, e.g., Schubert v. Lucent Techs., Inc. (In re Winstar Commc'ns, Inc.), 554 F.3d 382, 394-400 (3d Cir. 2009).

IV.  CONCLUSION

For the foregoing reasons, the Court will deny the Liquidating Trustee's Motion for Partial Summary Judgment and the Remaining Defendants' Motions to Dismiss and for Summary Judgment.

An appropriate Order is attached.

Dated: August 27, 2012                BY THE COURT:

                                      Mary F. Walrath
                                      United States Bankruptcy Judge

23