**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIBERTY BRANDS, LLC, | ) | Case No. 07-10645  (MFW) |
| | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL JOSEPH, as Liquidating | ) | |
| Trustee for Liberty Brands, LLC) | | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 09-50965  (MFW) |
| | ) | |
| SCOTT FEIT, SJF ASSOCIATES, | ) | |
| INC., NATIONAL DISTRIBUTION | ) | |
| NETWORK, BARRY GARNER, | ) | |
| DISCOUNT TOBACCO WAREHOUSE, | ) | |
| INC., A&A OF TUPELO, INC., | ) | |
| d/b/a GLOBE DISTRIBUTING, | ) | |
| SUNFLOWER SUPPLY COMPANY, INC. | ) | |
| GARY L. HALL, BENTLEY | ) | |
| INVESTMENTS OF NEVADA, LLC, | ) | |
| HALL RETAINED ANNUITY TRUST I, | ) | |
| and THE HALL FAMILY TRUST | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**OPINION**[1]

Before the Court are two counts (for avoidance of a post-petition transfer and for recharacterization of debt to equity) of an Amended Complaint by the Trustee against the Remaining

---

[1] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Defendants.[2]  Because the Court concludes that the post-petition
transfer was authorized by the Court, it will enter judgment in
favor of the Remaining Defendants on that count.  Because the
Court concludes that the Trustee has failed to establish that the
debt at issue was intended by the parties to be a capital
contribution, the Court will enter judgment in favor of the
Remaining Defendants on that count as well.


I.   FACTS

     The Court finds as facts those set forth in the Proposed
Findings of Fact and Conclusions of Law issued in this adversary
on this same date.


II.  JURISDICTION

     The Court has jurisdiction over the post-petition avoidance
count and the recharacterization of debt count.  28 U.S.C. §
157(b)(2)(A), (B) & (O).  Further, the Court has authority to
enter a final order on both counts.  See Katchen v. Landy, 382
U.S. 323, 329 (1966) (stating that the power to allow or to
disallow claims includes "full power to inquire into the validity
of any alleged debt or obligation of the bankrupt upon which a

---

     [2]  The Remaining Defendants are Barry Garner, Discount
Tobacco Warehouse, Inc., Sunflower Supply Company, Inc., Gary
Hall, Bentley Investments of Nevada, LLC, Hall Retained Annuity
Trust I, and the Hall Family Trust.

demand or a claim against the estate is based."); <u>In re 431 W.
Ponce De Leon, LLC</u>, Bankr. No 13-53479, 2014 WL 3925509, *20
(Bankr. N.D. Ga., Aug. 11, 2014) (holding that bankruptcy court
had authority to enter final order on recharacterization of
claims because "whether the insider claims are debt or equity is
integral to determining the treatment to be accorded the insider
claims and is a necessary first step to determine if allowance or
disallowance is required."); <u>In re Felice</u>, 480 B.R. 401 (Bankr.
D. Mass. 2012) (concluding that court has final authority to
enter order on avoidance of post-petition transfers).


III. DISCUSSION

    A.   <u>Avoidance of Post-Petition Transfer</u>

    In Count III of the Amended Complaint, the Trustee asserts
that the 11/13/2007 transfer of the funds to Bentley as part of
the settlement of the A&A claim is recoverable as an improper
post-petition payment.  11 U.S.C. § 549.  Section 549 of the
Bankruptcy Code provides that "the trustee may avoid a transfer
of property of the estate . . . that occurs after the
commencement of the case; and . . . that is not authorized under
this title or by the court."  <u>Id.</u>

    The 11/13/2007 transfer did occur after the commencement of
the Debtor's bankruptcy case on May 10, 2007.  The 11/13/2007
transfer was made pursuant to a settlement agreement, which this

Court approved.  (D.I. 182)[3]

In the Memorandum Opinion dated August 27, 2012, denying the Remaining Defendants' motion to dismiss this count, however, the Court noted that the approval of the settlement agreement could be invalidated if the Trustee could establish: (1) A&A was not owed anything at the time the petition was filed and at the time of the post-petition settlement; (2) counsel who appeared on A&A's behalf in the bankruptcy case was not authorized to act on A&A's behalf; (3) the payment by the Debtor to Bentley was not authorized by A&A to satisfy the debt owed to A&A; or (4) there were any affirmative misrepresentations to the Court or the Debtor regarding the A&A claim or the settlement.  (Adv. D.I. 170.)

        1.   Debt Owed to A&A

The Trustee asserts that there was no debt owed by the Debtor to A&A.  (Adv. D.I. 220 at 44.)  He relies on the A&A Answers to Interrogatories and the testimony of Randy Benham, president and owner of A&A, who he says admitted that the Debtor did not owe anything to A&A. (Tr. 11/5/13 at 112; JTEx. at 10-11.)

---

[3]    References to the record are as follows: "D.I. #" for pleadings from the main case; "Adv. D.I. #" for pleadings from the adversary; "Tr. [date] at [page]" for the trial transcripts; "[name] Dep. at [page]" for deposition transcripts; "JTEx. #" for Joint Trial Exhibits; "Ex. P-#" for Plaintiff's exhibits; "Ex. D-#" for Defendant's exhibits.

The Court finds that the evidence, taken as a whole, reflects that A&A was owed an obligation by the Debtor.  The Debtor listed A&A as a secured creditor in its Schedules.  (D.I. 1)  The DTW Purchase Order (and related security agreement) were assigned to A&A, which entitled it to receive product from the Debtor.  (JTExs. 10 & 4.)

In consideration for the assignment of the Purchase Order, A&A agreed to pay a premium to DTW on the cigarettes it received from the Debtor.  (JTEx. 10.)  A&A also agreed to forward any cash repayments of the Purchase Order (as opposed to product) it received from the Debtor to Hall or to DTW at Hall's direction. (Tr. 11/5/13 at 104.)

Nonetheless, as between the Debtor and A&A, the Debtor was obligated to deliver product to A&A, which entitled A&A to assert a secured claim against the Debtor in the bankruptcy case for the Debtor's unfulfilled obligations under the Purchase Order.

## 2.  Authorization to Act on A&A's Behalf

The Trustee contends that counsel who purported to represent A&A in the bankruptcy case was not authorized to act on A&A's behalf.  The Trustee relies on Benham's testimony that he did not sign a retention letter or pay any attorneys' fees in connection with this case, and on the lawsuit Benham filed against Hall in state court which alleges fraud in negotiating the A&A settlement with the Debtor.  (Tr. 11/5/13 at 121, 126; Ex. D-128 at ¶¶ 85-

87.)

Benham also testified, however, that he authorized a claim to be asserted on A&A's behalf based on the Purchase Order, that he was aware that Hall would be handling the bankruptcy matters, and that the settlement proceeds were ultimately owed to Hall. (Tr. 11/5/13 at 112, 121, 129.)  The complaint filed by Benham against Hall in state court acknowledges that "Hall would provide legal representation and handle all matters regarding the bankruptcy."  (Ex. D-128 at ¶¶ 81-82.)

As a result, the Court concludes that A&A authorized Hall (and therefore his attorneys) to act on A&A's behalf, in the Debtor's bankruptcy case.

        3.   Payment to Bentley

The Trustee asserts that A&A did not authorize the payment of the settlement funds to Bentley.  (Adv. D.I. 220 at 45.)

Benham repeatedly testified, however, that the money due from the Debtor was ultimately owed to Hall.  (Tr. 11/5/13 at 121, 129.)  Although the settlement funds were wired to Bentley, they were ultimately transferred to Hall and his trusts.  (Tr. 11/6/12 at 56-57.)  Neither Benham nor A&A has filed any pleading in this Court seeking to overturn the settlement or complaining about the payment of the A&A settlement to Bentley or ultimately to Hall.

The Court therefore finds that the payment to Bentley (and

6

ultimately to Hall) was authorized by A&A.

    4.   <u>Affirmative Misrepresentations</u>

The Trustee argues that Hall, through counsel, misrepresented that A&A had a claim against the Debtor and authorized the settlement of that claim. (Adv. D.I. 220 at 26.)

Because the Court has found that A&A had a claim against the Debtor and authorized the settlement of that claim through Hall, the Court concludes that there were no affirmative misrepresentations made. The Court, therefore, concludes that the post-petition transfer was validly authorized by the Court's approval of the settlement motion and it cannot be avoided under section 549. The Court will enter final judgment on Count III in favor of the Remaining Defendants.

    B.   <u>Recharacterization</u>

In Count XVIII of the Amended Complaint, the Trustee seeks to recharacterize all of the loans made by Hall and his related entities from debt to equity. (Adv. D.I. 122 at 28.) The Trustee argues that each of the loans arranged by Hall were actually capital contributions, which Hall disguised as loans in order to avoid liability under the Meridian non-competition agreement. (Adv. D.I. 220 at 8, 11, 70-71.)

Debt recharacterization depends on "whether the parties called an instrument one thing when in fact they intended it as something else. That intent may be inferred from what the

parties say in their contracts, from what they do through their
actions, and from the economic reality of the surrounding
circumstances." In re SubMicron Sys. Corp., 432 F.3d 448, 456
(3d Cir. 2006).

Recharacterization focuses on whether the debt actually
exists and "has nothing to do with inequitable conduct."
Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v.
Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.),
405 B.R. 527, 554 (Bankr. D. Del. 2009). Thus, debt arising from
a loan may be recharacterized as equity where "the parties to the
transaction in question intended the loan to be a disguised
equity contribution." Id.

The courts consider several factors in determining whether
recharacterization is appropriate, including:

> (1) the name given to the instrument; (2) the intent of
> the parties; (3) the presence or absence of a fixed
> maturity date; (4) the right to enforce payment of
> principal and interest; (5) the presence or absence of
> voting rights; (6) the status of the contribution in
> relation to regular corporate contributors; and (7)
> certainty of payment in the event of the corporation's
> insolvency or liquidation.

Friedman's Liquidating Trust v. Goldman Sachs Credit Partners,
L.P. (In re Friedman's Inc.), 452 B.R. 512, 519 (Bankr. D. Del.
2011). "The Third Circuit has rejected a 'mechanistic scorecard'
in favor of a case by case approach;" the overarching inquiry is
one of intent. Id. at 518-19 (citing SubMicron, at 455-56).

1.  The Sunflower Loan

8

The Trustee asserts that the Sunflower loan should be recharacterized as an equity contribution based on several factors.  (Adv. D.I. 220 at 70.)

It is undisputed that there was no (i) written documentation of the Sunflower loan, (ii) maturity date, (iii) schedule of payments, or (iv) fixed rate of interest.  (Tr. 11/4/13 at 14-15.)  These factors weigh in favor of recharacterization. Friedman's Inc., 452 B.R. at 519.

The Trustee also argues that the Sunflower loan was intended by the parties to be an infusion of capital.  (Adv. D.I. 220 at 3.)  In support, the Trustee points to Hall's deposition testimony that "it may have turned out to be a loan" but that he originally transferred the money as an "advance."  (Hall Dep. at 111-12.)

However, rather than an admission that the funds were a capital contribution, the Court finds that Hall characterized the Sunflower loan as an advance for product or a loan, not as a capital contribution.  (Hall Dep. at 110-12; 11/6/13 at 11.) Hall stated that the funds were advanced because he "owned . . . a private brand [of cigarettes] . . . and then [he] didn't have anybody to manufacture it going forward [after the Medallion sale]."  (Hall Dep. at 111.)

More compelling is the testimony of the Trustee's witness, Feit, who testified that he considered the Sunflower loan to be a

loan, not a capital contribution.  (Tr. 11/4/13 at 14.)  In his
testimony Feit distinguished the Sunflower loan from the
capitalization of the Debtor by its partners.  (Tr. 11/4/13 at
14.)  Further, the Sunflower loan was at all times denominated as
"Loan Payable to Sunflower" on the Debtor's books.  (JTEx. 28 at
L00485-488.)  Neither Hall nor Sunflower were stockholders in the
Debtor, nor did they acquire any voting rights as a result of the
Sunflower loan.

The Trustee asserts nonetheless that the fact that repayment
of the loan depended on the Debtor's success weighs in favor of
recharacterization.  (Adv. D.I. 220 at 3.)  He notes that Feit
testified that if the Debtor "couldn't sell product and generate
free cashflow, we couldn't repay the loan."  (Id.; Tr. 11/4/13 at
16.)

The Court is not convinced by this argument.  All extensions
of credit depend on the debtor's success; it does not make them
capital contributions.

Finally, the Trustee argues that the loan should be
recharacterized because it was subordinated to other creditors.
(Adv. D.I. 220 at 3.)  The Trustee bases this argument on Feit's
testimony that "we paid other creditors before we paid [the
Sunflower] loan."  (Tr. 11/4/13 at 16.)

The evidence refutes this testimony, however, demonstrating
that the Debtor made regular payments to Sunflower on the loan in

10

2003 and 2004, thereafter made payments at Hall's direction to
Garner and DTW in satisfaction of the Sunflower loan, and
ultimately repaid the Sunflower loan in full.  (JTEx. 28 at
L00485-488.)

The Court concludes that the evidence of the parties' intent
at the time of the transaction weighs against recharacterization
of the Sunflower loan.  Thus, the Court concludes that the
Trustee has not proven that the Sunflower loan was intended as a
contribution of equity, and, consequently, it should not be
recharacterized.

2.  <u>The Purchase Order</u>

The Trustee argues that the DTW Purchase Order should be
recharacterized as equity because (1) there was no term of
repayment; (2) there was no interest charged; (3) the Debtor
would not have been able to borrow a similar amount from outside
lenders; (4) the security interest granted was less valuable than
the advance under the Purchase Order; (5) DTW was entitled to
receive only product, not money, in repayment of the advance; and
(6) the Debtor had to succeed for DTW to get the benefit of its
bargain.  (Adv. D.I. 220 at 10.)

The Purchase Order was documented and was also secured by a
security interest in all of the Debtor's assets.  (JTExs. 4 & 5.)
While there was no fixed rate of interest under the Purchase
Order, DTW in effect received the equivalent of interest by being

11

able to purchase cigarettes at a discounted price despite
fluctuations in the market.  (Tr. 11/5/13 at 149-50.)  Further,
if either party terminated the agreement, the Purchase Order <u>did</u>
provide for payment of interest at a rate of 12% on the value of
any remaining product that was not purchased.  (JTEx. 4.)

Finally, the fact that the Debtor was required to stay in
business in order for DTW to continue to receive product is not
compelling; even a debtor who receives a loan must succeed for
the creditor to be repaid.  Furthermore, the security agreement
would protect DTW in case of The Debtor's failure.  (JTEx. 5.)

The Court concludes that the Purchase Order was not a
contribution of capital and should not be recharacterized as
equity.

### 3.  <u>The Miller Loan</u>

The Trustee argues that the April 2006 loan from Miller
should be recharacterized as an equity contribution because it
was not documented, did not have a fixed maturity date, and did
not have a fixed rate of interest.  (Adv. D.I. 220 at 71.)

These contentions are refuted by the evidence.  Although the
loan was undocumented at the time it was made, the loan was
documented shortly thereafter in October of 2006, and Feit and
Hall communicated about documenting the loan in the interim.
(Tr. 11/4/13 at 31-32.)  Further, the Promissory Note included a
fixed maturity date of April 14, 2007, and an interest rate of

12% for the loan.  (JTEx. 8.)

Therefore, the Court concludes that the loan from Miller should not be recharacterized as an equity contribution.


IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will enter judgment in favor of the Remaining Defendants on the avoidance of post-petition transfer and the recharacterization of debt counts of the Trustee's Amended Complaint.

An appropriate Order is attached.


Dated: September 25, 2014          BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

13

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
In re:                       )    Chapter 11
                             )
LIBERTY BRANDS, LLC,         )    Case No. 07-10645  (MFW)
                             )
            Debtor.          )
                             )
MICHAEL JOSEPH, as Liquidating )
Trustee for Liberty Brands, LLC)
                             )
            Plaintiff,       )
                             )
     v.                      )
                             )
SCOTT FEIT, SJF ASSOCIATES,  )    Adv. No. 09-50965  (MFW)
INC., NATIONAL DISTRIBUTION  )
NETWORK, BARRY GARNER,       )
DISCOUNT TOBACCO WAREHOUSE,  )
INC., A&A OF TUPELO, INC.,   )
d/b/a GLOBE DISTRIBUTING,    )
SUNFLOWER SUPPLY COMPANY, INC. )
GARY L. HALL, BENTLEY        )
INVESTMENTS OF NEVADA, LLC,  )
HALL RETAINED ANNUITY TRUST I, )
and THE HALL FAMILY TRUST    )
                             )
            Defendants.      )
```

**O R D E R**

**AND NOW,** this **25th** day of **SEPTEMBER, 2014,** upon consideration of Counts III and XVIII of the Liquidating Trustee's Amended Complaint and for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that judgment is entered in favor of the Remaining Defendants on Count III (Post-Petition Transfers) of the Amended Complaint; and it is further

**ORDERED** that judgment is entered in favor of the Remaining Defendants on Count XVIII (Recharacterization) of the Amended Complaint.

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Jason C. Powell, Esquire[1]

---

[1]  Counsel shall distribute a copy of this Order and the accompanying Opinion to all interested parties and file a Certificate of Service with the Court.

**SERVICE LIST**

Jason C. Powell, Esquire
Thomas R. Riggs, Esquire
Ferry, Joseph & Pearce, P.A.
824 N. Market Street, Suite 1000
P.O. Box 1351
Wilmington, DE 19899
Counsel for the Liquidating Trustee

William F. Taylor, Jr., Esquire
McCarter & English, LLP
405 N. King Street, 8th Floor
Wilmington, DE 19801
Counsel for the Remaining Defendants

William M. Modrcin, Esquire
Johnston, Ballweg & Modrcin, L.C.
9393 West 110th Street, Suite 450
Overland Park, Kansas 66210
Counsel for the Remaining Defendants